## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Johnny Q. Stephens,<br><br>Petitioner,<br><br>v.<br><br>Denese Wilson, Warden,<br><br>Respondent. | Case No. 14-cv-00898 (MJD/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Johnny Q. Stephens, K1-Unit, FCI, P.O. Box. 1000, Sandstone, MN 55072, *pro se*.

David W. Fuller, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondent.

HILDY BOWBEER, United States Magistrate Judge

### I.    Introduction

This matter is before the Court on Petitioner Johnny Q. Stephens' Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. No. 1].  Respondent Denese Wilson opposes the Petition [Doc. No. 7].  The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, the Court recommends that the Petition be denied, and this action be dismissed with prejudice.

### II.    Background

On August 11, 2011, in the United States District Court for the District of South

Carolina, Petitioner Johnny Q. Stephens pled guilty to one count of conspiracy to possess with intent to distribute and distribution of 5 kilograms or more of cocaine and 280 grams or more of cocaine base.  (Plea, *United States v. Johnny Quinton Stephens*, No. 4:10-cr-01040-TLW (D.S.C. Aug. 11, 2011), ECF 114.)  On October 18, 2011, Petitioner was sentenced to 100 months, followed by 5 years of supervised release.  (J. & Commitment, *United States v. Johnny Quinton Stephens*, No. 4:10-cr-01040-TLW (D.S.C. Oct. 18, 2011), ECF 130.) Petitioner is currently confined at FCI Sandstone, Minnesota, with a projected release date of November 2, 2018, via good conduct time release.[1]  (Buege Decl. ¶ 3 [Doc. No. 8].)

On July 16, 2013, Officer S. Pinckney at FCI Williamsburg, South Carolina, conducted a search of cell 214, which belonged to Petitioner and another inmate at the time. (*Id.* ¶ 4; Incident Report at 1 [Doc. No. 8-1].)  During this search, Officer Pinckney reached behind the lower bed and found a Verizon cell phone attached to locker 314L by magnets, pushed up against the frame of bed 214.  (Incident Report at 1.)  Petitioner was assigned to this bed.  (Buege Decl. ¶ 4.)  Later that day, Officer Pinckney wrote Incident Report 2468945, charging Petitioner with Possession of a Hazardous Tool (the cell phone), a Code 108 violation of Bureau of Prisons (BOP) policy.  (Buege Decl. ¶ 5; Incident Report at 1.)  Petitioner's cell mate was also charged with the same violation. (Buege Decl. ¶ 5.)

On July 17, 2013, the investigating staff member, Lieutenant J. Brown, provided a copy of the Incident Report to Petitioner and advised him of his rights.  (*Id.* ¶ 6; Mitchell

---

[1]  Before Petitioner's current confinement at FCI Sandstone, Minnesota, Petitioner was confined at FCI Williamsburg, South Carolina.

Decl. Attach. A at 1 [Doc. No. 9-1].)  Petitioner stated he understood his rights and the Incident Report as written, and that he had been set up by another inmate.  (Buege Decl. ¶ 6.)  Petitioner did not request any witnesses.  (*Id.*)

Based on Officer Pinckney's statements in the Incident Report, Lieutenant Brown concluded the incident to be true and justified to support the Code 108 charge.  (*Id.* ¶ 7.)  Petitioner was placed in the Special Housing Unit, and the Incident Report was referred to the Unit Discipline Committee[2] (UDC) for further review.  (*Id.*)

On July 17, 2013, Petitioner appeared before the UDC.  (Buege Decl. ¶ 9.)  He was advised of his rights, stated that another inmate had set him up, and denied using the cell phone.  (*Id.*)  Due to the seriousness of the charge, the UDC referred the matter to the DHO for further hearing.  (*Id.*)  The UDC recommended that if Petitioner was found to have committed the prohibited act by the DHO, the DHO should impose the sanctions of 30 days loss of good conduct time credit, 30 days of disciplinary segregation, and 180 days loss of telephone, commissary, and visiting privileges.  (*Id.*)  That same day, staff member T. Page provided Petitioner with two forms: (1) Inmate Rights at Discipline Hearing, which included the opportunity to have a staff representative, to call witnesses, and to present evidence; and (2) Notice of Discipline Hearing before the DHO.  (Buege Decl. ¶ 10; *Id.* Attach. C [Doc. No. 8-1].)  Petitioner did not request any staff

---

[2]  A Unit Discipline Committee ordinarily consists of two or more staff members delegated by the warden with the authority and duty to hold an initial hearing upon completion of the investigation.  (Buege Decl. ¶ 8 (citing 28 C.F.R. § 541.7).)  If an inmate is charged with a Greatest or High severity prohibited act, the Unit Discipline Committee will automatically refer the Incident Report to the Disciplinary Hearing Officer (DHO) for further review.  (*Id.*)

representative or witnesses.  (Buege Decl. ¶ 10.)

The DHO hearing occurred on July 24, 2013.[3]  (Mitchell Decl. ¶ 3 [Doc. No. 9].)

Petitioner stated that he understood his rights, had no documentary evidence to present,

did not request any witnesses, and declined the services of a staff representative to assist

him at the hearing.  (*Id.* Attach. A at 2.)  Plaintiff also stated:

- He had only been at the facility for about a week and a half;

- He did not have any knowledge of a cell phone;

- He lived in an open dormitory in the area where everyone could plug in their breathing machines;

- Officer Pinckney and Ms. Holbrook searched him and the cell;

- Officer Pinckney never said anything to him or his cell mate;

- Another inmate, Robinson, was known to have cell phones;

- Robinson once approached Petitioner about a cell phone, and Petitioner informed Robinson that he did not need a cell phone because he was at home.

(Mitchell Decl. ¶ 3; *Id.* Attach. A at 1.)

On July 29, 2013, the DHO found that Petitioner committed Possession of a

Hazardous Tool.  (Mitchell Decl. Attach. A at 2.)  The DHO considered Officer

Pinckney's report and Petitioner's statements, but ultimately found the report more

credible.  (*Id.*)  She noted the locker and attached cell phone were next to Petitioner's

---

[3]  Before Petitioner's hearing, the DHO conducted a hearing with Petitioner's cell mate. (Mitchell Decl. ¶ 3 n.1.)  Petitioner's cell mate had a staff witness who stated the cell phone was discovered in the inmates' cell, but it did not belong to the cell mate.  (*Id.*) The DHO found the cell mate did not commit the prohibited act and expunged his Incident Report.  (*Id.*)

bed, and Petitioner failed to provide any evidence that he did not possess the cell phone

or have any knowledge of the cell phone. (*Id.*) The DHO believed that Petitioner was

denying the charge because he did not want to take responsibility for his actions. (*Id.*)

She observed the staff had nothing to gain by providing a false statement. (*Id.*) The

DHO represented that she was an impartial factfinder because she did not write the

Incident Report and was not the investigating officer, a member of the UDC, or a witness

to the incident. (Mitchell Decl. ¶ 4.)

The DHO sanctioned Petitioner to disciplinary segregation of 60 days,

disallowance of 41 days of good conduct time credit, and loss of visiting and telephone

privileges for 365 days, under 28 C.F.R. § 541.4 and BOP policy. (Mitchell Decl.

Attach. A at 2.) She explained:

> The action/behavior on the part of any inmate to possess, manufacture, or
> introduce a hazardous tool into any correctional institution threatens the
> safety and security, not only of the inmate involved, but that of the entire
> institution. Possession of a cell phone is not authorized. Cellular
> telephones/charges are hazardous tools. The action on the part of any inmate
> to possess a hazardous tool (cellular telephone/charge) in any correctional
> institution seriously jeopardizes the safety and security for staff, inmates, and
> the general public as a whole. Possessing a cellular telephone gives an
> inmate an opportunity to make completely unmonitored calls, which can
> contain threats to the general public or plans for an escape attempt or
> planning or participating in other illegal activity.
>
> The sanction of 60 days disciplinary segregation is imposed to punish you
> for your actions. The sanction of disallowance of 41 days good conduct time
> is imposed as an immediate sanction to show you that this type of offense is
> of a serious nature and merits serious sanctions. The sanctions of loss [sic]
> telephone/visiting privileges for 365 days each is imposed to impress upon
> you the fact that you are expected to adhere to all rules and regulations of the
> institution. The loss of these privileges will have a more significant impact
> upon your future behavior.

(*Id.*)  Petitioner was advised of his appeal rights through the Administrative Remedy

Program, and a copy of the DHO's report was given to him on August 8, 2013.  (*Id.*;

Mitchell Decl. ¶ 7.)

On October 15, 2013, Petitioner filed an administrative remedy request directly to

the BOP's regional office, challenging the DHO hearing.  (Buege Decl. ¶ 11.)

Petitioner's appeal was denied, and he further appealed to the central office.  (*Id.*)  That

appeal was received on January 6, 2014, and Petitioner has not received a response.  (*Id.*)

The response was due on March 7, 2014.  (*Id.*)  Defendant acknowledges that Petitioner

exhausted his administrative remedies, because the absence of a response by the due date

constitutes a denial of his appeal under 28 C.F.R. § 542.18.  (Resp. to Pet. Writ Habeas

Corpus at 8.)

On March 31, 2014, Petitioner filed the instant litigation, challenging his prison

discipline.  (Pet. at 1 [Doc. No. 1].)  Petitioner seeks to have the DHO's sanctions

vacated, the Incident Report dismissed or expunged, and to be "placed back in the

position he [Petitioner] was in prior to the incident report."  (Reply at 3 [Doc. No. 11].)

## III.    Discussion

### 1.    Standard of Review

"The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in

custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2241(c)(3).  "Section 2241 is appropriate where a federal petitioner challenges

the execution of a sentence or the length or duration of his confinement."  *Jones v. Jett*,

No. 10-cv-4201 (MJD/AJB), 2011 WL 5507222, at *2 (D. Minn. Aug. 12, 2011) (citing

*Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002)).

Not all rights in a criminal case are available in a prison discipline matter, but prisoners retain due process rights under the Constitution. *See Espinoza v. Peterson*, 283 F.3d 949, 951-52 (8th Cir. 2002) (citing *Wolff v. McDonald*, 418 U.S. 539, 555-58 (1974)). Due process required for a prisoner in a prison discipline case includes:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Espinoza*, 283 F.3d at 952. Due process also requires at least "some evidence" to support the prison disciplinary action. *Hill*, 472 U.S. at 454. In determining whether this standard is met, courts consider "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*

### 2.    Petitioner's Claims

Petitioner argues that he was denied due process because the DHO did not consider forensic analysis of the cell phone or the possibility that other inmates possessed the cell phone. The Court disagrees, because neither of these grounds is required for due process in a prison disciplinary matter.

The first requirement for due process is whether Petitioner received advance written notice of the disciplinary charges. *See Hill*, 472 U.S. at 454. Petitioner received such notice when Incident Report 2468945 was delivered to him on July 17, 2013, several days before his DHO hearing on July 24, 2013. (Buege Decl. ¶¶ 6, 9, 11; Incident

7

Report at 1; Mitchell Decl. Attach. A at 1.)  This requirement is therefore met.

The second requirement is whether Petitioner had the opportunity to call witnesses and present documentary evidence in his defense.  *See Hill*, 472 U.S. at 454.  On July 17, 2013, Petitioner received notice of his right to call witnesses and present evidence. (Buege Decl. Attach. C at 1.)  At the DHO hearing on July 24, 2013, Petitioner stated that he had no documentary evidence to present, and he did not request any witnesses. (Mitchell Decl. Attach. A at 1-2.)  Thus, the second requirement is satisfied.

The third requirement for due process is whether Petitioner received a written statement from the factfinder, stating the evidence relied on and the reasons for the disciplinary action.  *See Hill*, 472 U.S. at 454.  This requirement, too, is met.  The DHO's decision set forth the evidence she considered—*i.e.*, Officer Pinckney's written report, Petitioner's statements at the hearing—and explained her reasoning for the various sanctions imposed.  (Mitchell Decl. Attach. A at 2.)

Finally, the Court considers whether there is at least "some evidence" to support the DHO's disciplinary action.  The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) (citing *Hill*, 472 U.S. at 455).  Rather, the relevant question is whether "any evidence in the record" could support the disciplinary authority's findings.  *Hill*, 472 U.S. at 455-56. Courts cannot overturn the findings of a prison disciplinary official even if the evidence "might be characterized as meager" or circumstantial.  *Id.* at 457.

Here, there is "some evidence" to support the DHO's findings.  In determining

that Petitioner committed the charged act, the DHO considered Officer Pinckney's July 16, 2013, report, which documented his search of Petitioner's assigned cell, during which he found behind Petitioner's bed (214L) a cell phone attached to a locker (314L), pushed against the frame of Petitioner's bed. (Mitchell Decl. Attach. A at 2.) The DHO noted that locker 314L was next to Petitioner's bed, enabling him to "reach down and get the phone." (*Id.*) The DHO also considered the absence of evidence that Petitioner did not have the phone or did not know about it. (*Id.*) She believed Petitioner "had a lot to loose [sic]" if found guilty, because he would be transferred from the facility, which was close to Petitioner's home. (*Id.*) The DHO considered Petitioner's statements but found Officer Pinckney's more credible. (*Id.*) Such evidence, namely the written report, sufficiently supports the DHO's conclusion that Petitioner possessed the cell phone.

Moreover, under the theory of "collective culpability," mere evidence that the cell phone was found in Petitioner's shared cell, regardless of *where* in the cell, shows "some evidence" that Petitioner committed the charged act. *See Flowers*, 661 F.3d at 980 (observing that "contraband found in a shared area" of a prison can constitute "some evidence" to support sanctions in prison discipline cases); *Collier v. Fisher*, No. 13-cv-0379 (JRT/JJK), 2013 WL 3716643, at *7 (D. Minn. July 12, 2013) (quoting *Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013), that "the discovery of contraband in a shared cell constitutes 'some evidence' of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits"). Petitioner does not dispute Officer Pinckney's report that the cell phone was found in his assigned cell, or that the cell was shared.

Thus, the "some evidence" standard is met under this theory as well.

For these reasons, the Court concludes that Petitioner was afforded due process,

and Petitioner's challenge to the disciplinary decision on this ground should be denied.

## IV.     Recommendation

Based on the foregoing and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED THAT**:

1.     Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. No. 1] be **DENIED**; and

2.     This action be **DISMISSED WITH PREJUDICE**.


Dated:          January 20, 2015                    s/  *Hildy Bowbeer*
                                                    HILDY BOWBEER
                                                    United States Magistrate Judge


### NOTICE

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 6, 2015**, a writing that specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  A judge shall make a *de novo* determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.